Exhibit A-3



*0210000000000000000000AFS0950*

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $400,000.00 | 06-09-2017 | 06-08-2018 | | | | *** | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** Clear Vision Express, Ltd.
5401 McPherson Road
Laredo, TX 78041

**Lender:** Compass Bank
Texas Processing Center
1703 West 5th Street, Suite 500
Austin, TX 78703
(800) 239-1996

**Principal Amount: $400,000.00** **Date of Note: June 9, 2017, Executed** 6/20/17

**PROMISE TO PAY. Clear Vision Express, Ltd. ("Borrower") promises to pay to Compass Bank ("Lender"), or order, in lawful money of the United States of America, the principal amount of Four Hundred Thousand & 00/100 Dollars ($400,000.00) or so much as may be outstanding, together with interest on the unpaid outstanding principal balance of each advance. Interest shall be calculated from the date of each advance until repayment of each advance or maturity, whichever occurs first.**

**CHOICE OF USURY CEILING AND INTEREST RATE.** The interest rate on this Note has been implemented under the "Weekly Ceiling" as referred to in Sections 303.002 and 303.003 of the Texas Finance Code.

**PAYMENT. Borrower will pay this loan in one payment of all outstanding principal plus all accrued unpaid interest on June 8, 2018. In addition, Borrower will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning July 9, 2017, with all subsequent interest payments to be due on the same day of each month after that. Unless otherwise agreed or required by applicable law, payments will be applied first to interest, then to any fees or amounts for additional products or services you obtain in connection with this loan (such as debt cancellation/suspension protection, credit insurance, warranty coverage, etc.) that are payable with or as part of your payment, then to principal due, then to any unpaid collection costs and other charges due under this Note, with any remaining amount to the outstanding principal balance. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing. Notwithstanding any other provision of this Note, Lender will not charge interest on any undisbursed loan proceeds. No scheduled payment, whether of principal or interest or both, will be due unless sufficient loan funds have been disbursed by the scheduled payment date to justify the payment.**

**VARIABLE INTEREST RATE.** The interest rate on this Note is subject to change from time to time based on changes in an independent index which is the prime rate as published in The Wall Street Journal's "Money Rates" table. If multiple prime rates are quoted in the table, then the highest prime rate will be the Index Rate (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notifying Borrower. Lender will tell Borrower the current Index rate upon Borrower's request. The interest rate change will not occur more often than each day. Borrower understands that Lender may make loans based on other rates as well. **The Index currently is 4.000% per annum.** Interest prior to maturity on the unpaid principal balance of this Note will be calculated as described in the "INTEREST CALCULATION METHOD" paragraph using a rate of 0.310 percentage points over the Index, resulting in an initial rate of 4.310% per annum based on a year of 360 days. NOTICE: Under no circumstances will the interest rate on this Note be more than (except for any higher default rate or Post Maturity Rate shown below) the lesser of 18.000% per annum or the maximum rate allowed by applicable law. For purposes of this Note, the "maximum rate allowed by applicable law" means the greater of (A) the maximum rate of interest permitted under federal or other law applicable to the indebtedness evidenced by this Note, or (B) the "Weekly Ceiling" as referred to in Sections 303.002 and 303.003 of the Texas Finance Code.

**INTEREST CALCULATION METHOD. Interest on this Note is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding, unless such calculation would result in a usurious rate, in which case interest shall be calculated on a per diem basis of a year of 365 or 366 days, as the case may be. All interest payable under this Note is computed using this method. This calculation method results in a higher effective interest rate than the numeric interest rate stated in this Note.**

**TRANSACTIONS WITH AFFILIATES.** Borrower shall not directly or indirectly (including through its parent company(ies), subsidiary(ies), or affiliate(s)) transfer any proceeds of the Loan to, nor use them for the benefit of, a Bank Affiliate, including using any of the proceeds of the Loan to make any payment on (or with respect to) any loan or other debt from any Bank Affiliate. Borrower may request a list of Bank Affiliates, which is updated on a quarterly basis, from the Bank by contacting its relationship manager. The term "Bank Affiliate" means any entity (1) that is directly or indirectly (including ownership through a trust and beneficial ownership), controlling, controlled by, or under common control with Lender (such an entity a "Control Entity"), (2) in which a majority of its directors, trustees, or general partners (or individuals exercising similar functions) constitute a majority of the persons holding any such office with Lender or a Control Entity, (3) that is sponsored and advised on a contractual basis by Lender or another Bank Affiliate, or (4) that is an investment fund for which Lender or any other Bank Affiliate serves as an investment adviser. Ownership of fifteen percent (15%) or more of the ownership interest in an entity shall be deemed control of the entity, and each general partner shall be deemed to have control over a partnership.

To the extent the proceeds of this Loan will be used to purchase securities (regardless of whether such purchase is conducted through BBVA Securities Inc. or through another broker-dealer): (1) no securities of a Bank Affiliate (including those underwritten by a Bank Affiliate) shall be purchased during an issuance or underwriting period, or in a way that would transfer Loan proceeds to a Bank Affiliate; (2) no securities shall be purchased where a Bank Affiliate is selling them as principal (even in the open market); and (3) Borrower agrees to promptly notify Lender of any violation of this provision.

Failure to comply with the foregoing Transactions with Affiliates requirements at any time during the term of this Agreement, including renewals and extensions thereof, shall be deemed a Default and subject to the default provisions and remedies available to Lender.

**PREPAYMENT.** Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Prepayment in full shall consist of payment of the remaining unpaid principal balance together with all accrued and unpaid interest and all other amounts, costs and expenses for which Borrower is responsible under this Note or any other agreement with Lender pertaining to this loan, and in no event will Borrower ever be required to pay any unearned interest. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments of accrued unpaid interest. Rather, early payments will reduce the principal balance due. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. **All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: Compass Bank, Texas Processing Center, 1703 West 5th Street, Suite 500, Austin, TX 78703.**

**LATE CHARGE.** If a payment is 10 days or more late, Borrower will be charged **5.000% of the unpaid portion of the regularly scheduled payment.**

**POST MATURITY RATE.** The Post Maturity Rate on this Note is the lesser of (A) the maximum rate allowed by law or (B) the rate formed by increasing the applicable interest rate on this Note by an additional 2.000 percentage point margin ("Post Maturity Rate Margin"), with the Post Maturity Rate Margin applying to each succeeding interest rate change that would have applied had there been no acceleration. Borrower will pay interest on all sums due after final maturity, whether by acceleration or otherwise, at that rate.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to repay this Note or perform Borrower's obligations under this Note or any of the related documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this

Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The dissolution or termination of Borrower's existence as a going business or the death of any partner, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Events Affecting General Partner of Borrower.** Any of the preceding events occurs with respect to any general partner of Borrower or any general partner dies or becomes incompetent.

**Change In Ownership.** The resignation or expulsion of any general partner with an ownership interest of twenty-five percent (25%) or more in Borrower.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire indebtedness, including the unpaid principal balance under this Note, all accrued unpaid interest, and all other amounts, costs and expenses for which Borrower is responsible under this Note or any other agreement with Lender pertaining to this loan, immediately due, without notice, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire an attorney to help collect this Note if Borrower does not pay, and Borrower will pay Lender's reasonable attorneys' fees. Borrower also will pay Lender all other amounts Lender actually incurs as court costs, lawful fees for filing, recording, releasing to any public office any instrument securing this Note; the reasonable cost actually expended for repossessing, storing, preparing for sale, and selling any security; and fees for noting a lien on or transferring a certificate of title to any motor vehicle offered as security for this Note, or premiums or identifiable charges received in connection with the sale of authorized insurance.

**JURY WAIVER. Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.**

**GOVERNING LAW. This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Texas without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of Texas.**

**DISHONORED CHECK CHARGE.** Borrower will pay a processing fee of $25.00 if any check given by Borrower to Lender as a payment on this loan is dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts.

**LINE OF CREDIT.** This Note evidences a revolving line of credit. Advances under this Note, as well as directions for payment from Borrower's accounts, may be requested orally or in writing by Borrower or by an authorized person. Lender may, but need not, require that all oral requests be confirmed in writing. Borrower agrees to be liable for all sums either: (A) advanced in accordance with the instructions of an authorized person or (B) credited to any of Borrower's accounts with Lender. The unpaid principal balance owing on this Note at any time may be evidenced by endorsements on this Note or by Lender's internal records, including daily computer print-outs. Lender will have no obligation to advance funds under this Note if: (A) Borrower or any guarantor is in default under the terms of this Note or any agreement that Borrower or any guarantor has with Lender, including any agreement made in connection with the signing of this Note; (B) Borrower or any guarantor ceases doing business or is insolvent; (C) any guarantor seeks, claims or otherwise attempts to limit, modify or revoke such guarantor's guarantee of this Note or any other loan with Lender; (D) Borrower has applied funds provided pursuant to this Note for purposes other than those authorized by Lender; or (E) Lender in good faith believes itself insecure. **This revolving line of credit shall not be subject to Ch. 346 of the Texas Finance Code.**

**FEE TO WAIVE VIOLATION OF COVENANT.** Lender reserves the right to assess and collect a fee in connection with any agreement by Lender to waive the violation of any covenant contained in the Note or any other document or agreement signed in connection with the Note or to waive or forego its rights and remedies upon the occurrence of a default. The foregoing statement shall not in any respect obligate the Lender to waive the violation of any covenant or to forego its rights and remedies upon the occurrence of a default, which it may or may not do in its sole discretion.

**AMENDMENTS.** This Note constitutes the entire understanding and agreements of the parties as to the matters set forth in this Note. No alteration or amendment of this Note shall be effective unless given in writing and signed by the party or parties sought to be bound by the alteration or amendment.

**SEVERABILITY.** If a court of competent jurisdiction finds any provision of this Note to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Note. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Note shall not affect the legality, validity or enforceability of any other provision of this Note.

**ADDITIONAL PROVISIONS.** Notwithstanding any other provisions of this Note to the contrary: (a)**Lender's Remedies.** Lender also may exercise any and all remedies available to it. Lender's rights are cumulative and may be exercised together, separately, and in any order; (b)**No Assignment.** Borrower agrees not to assign any of Borrower's rights or obligations under this Note; (c)**Prepayments.** The terms "prepayment" and "early payment" mean any payment that exceeds the combined amount of interest, principal due, and charges due as of the date Lender receives that payment. The amount of this excess will be applied to the outstanding principal balance;(d)**Final Payment.** Borrower agrees that, if Borrower owes any late charges, collection costs or other amounts under this Note or any related documents, Borrower's final payment under this Note will include all of these amounts, as well as all unpaid principal and accrued interest;(e)**Loan Fees.** Borrower agrees that all loan fees and other prepaid finance charges are fully earned as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default).

**BUSINESS PURPOSE.** The Borrower agrees to use the proceeds of this Note or Credit Agreement solely for business purposes and not any personal, family or household purpose.

**CHANGE IN INITIAL INTEREST RATE.** If this Note evidences an extension of credit with a variable rate and an initial or a current interest rate or index is stated, the initial or current rate or index stated on the Note may differ from the actual rate or index due to changes in the rate or index before closing.

**CONSTRUCTION OF DOCUMENTS.** In the event of any conflict within the provisions of this Note or between this Note and any other document referred to or executed in connection with this Note, and notwithstanding any other provision to the contrary in any of the foregoing, the provisions most favorable to Lender shall control. The parties hereto agree and acknowledge that no rule of construction permitting or requiring any claimed ambiguities to be resolved against the drafting party shall be employed in the interpretation of this Note or any of the other documents referred to or executed in connection with this Note.

**ERRORS AND OMISSIONS.** I agree that if deemed necessary by Lender or any agent closing the loan evidenced by this Note ("the Loan"), Lender or the agent may correct and adjust this Note and any other documents executed in connection with the Loan ("Related Documents") on my behalf, as if I were making the correction or adjustment, in order to correct clerical errors. A clerical error is information in a document that is missing or that does not reflect accurately my agreement with Lender at the time the document was executed. If any such clerical errors are material changes, I agree to fully cooperate in correcting such errors within 30 days of the date of mailing by Lender of a request to do that. Any change in the documents after they are signed to reflect a change in the agreement of the parties is an "alteration" or "amendment," which must be in writing and signed by the party who will be bound by the change.

**MINIMUM INTEREST RATE.** Notwithstanding anything to the contrary contained in your note, credit agreement or other instrument ( the "Note") your interest rate or Periodic Rate, will never be lower than the legal minimum interest rate or floor as described in your Note. If your Note provides for a variable rate tied to an index plus a margin, that rate may, at times, total an amount less than the Minimum Interest Rate. In such case your interest rate or Periodic Rate will be the stated Minimum Interest Rate. In the event that the sum of the Index plus the margin is greater than the Minimum Interest Rate, then this higher rate shall be the interest rate or Periodic Rate charged on your Note.

**REINSTATEMENT OF MINIMUM INTEREST RATE.** If the Note provides for a minimum interest rate (sometimes referred to as the 'floor'), and such minimum interest rate is waived or removed by Lender in conjunction with Borrower entering into an interest rate swap transaction (e.g., a derivative transaction entered into under an International Swap Dealers Association (ISDA) Master Agreement) with Lender in association with the Note, such minimum interest rate shall automatically be reinstated if, and at the time, the interest rate swap transaction is canceled or terminated for any reason.

**AUTHORIZATION TO OBTAIN CREDIT INFORMATION REGARDING BORROWER.** Borrower hereby authorizes Lender to obtain credit information on Borrower from creditors and credit reporting agencies at any time and from time to time for the purpose of reviewing any loan, other financial accommodation or service provided by Lender to Borrower.

**ADDITIONAL EVENTS OF DEFAULT.** Notwithstanding any other provisions herein to the contrary, each of the following also shall be an Event of Default hereunder:

(i) any change in the ownership (whether in a single transaction or a series of transactions) of twenty-five percent (25%) or more of the ownership interests (as defined below) of Borrower, any Guarantor or any Grantor; "ownership interest" of any entity shall mean any direct or indirect ownership, control or profit interests in such entity, including any and all shares, membership interests, general and limited partnership interests, trust interests or other equivalents (regardless of how designated).

(ii) Any material adverse change in the financial condition of any Guarantor or Grantor.

**JURISDICTION / SERVICE OF PROCESS.** Any legal action or proceeding brought by Lender or Borrower against the other arising out of or relating to the loan or other extension of credit evidenced by, secured by or otherwise related to this instrument or agreement (a "Proceeding") shall be instituted in the federal court for or the state court sitting in the county where Lender's office (at the address for Lender first set forth above) is located; provided that, notwithstanding the foregoing, Lender shall have the right to bring any Proceeding against any party hereto or its properties in the courts of any other jurisdiction. With respect to any Proceeding, Borrower, to the fullest extent permitted by law, irrevocably: (i) waives any objections that Borrower may now or hereafter have based on venue and/or forum non conveniens in such federal or state court (and agrees not to plead or claim the same); (ii) submits to the jurisdiction of any such federal or state court; (iii) agrees that service of process in any Proceeding may be effected by mailing a copy thereof by registered or certified United States mail (or any substantially similar form of United States mail), postage prepaid, to the address for Borrower first set forth above; and (iv) agrees that nothing herein shall affect the right to effect service of process in any other manner permitted by law.

**REINSTATEMENT OF MINIMUM INTEREST RATE OR INDEX.** If the Note provides for a minimum interest rate or minimum interest rate index (sometimes referred to as the 'floor'), and such minimum interest rate or minimum interest rate index is waived or removed in conjunction with Borrower entering into an interest rate swap transaction, such minimum interest rate shall automatically be reinstated if, and at the time, the interest rate swap transaction is canceled or terminated for any reason.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Borrower does not agree or intend to pay, and Lender does not agree or intend to contract for, charge, collect, take, reserve or receive (collectively referred to herein as "charge or collect"), any amount in the nature of interest or in the nature of a fee for this loan, which would in any way or event (including demand, prepayment, or acceleration) cause Lender to charge or collect more for this loan than the maximum Lender would be permitted to charge or collect by federal law or the law of the State of Texas (as applicable). Any such excess interest or unauthorized fee shall, instead of anything stated to the contrary, be applied first to reduce the principal balance of this loan, and when the principal has been paid in full, be refunded to Borrower. The right to accelerate maturity of sums due under this Note does not include the right to accelerate any interest which has not otherwise accrued on the date of such acceleration, and Lender does not intend to charge or collect any unearned interest in the event of acceleration. All sums paid or agreed to be paid to Lender for the use, forbearance or detention of sums due hereunder shall, to the extent permitted by applicable law, be amortized, prorated, allocated and spread throughout the full term of the loan evidenced by this Note until payment in full so that the rate or amount of interest on account of the loan evidenced hereby does not exceed the applicable usury ceiling. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, notice of dishonor, notice of intent to accelerate the maturity of this Note, and notice of acceleration of the maturity of this Note. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party, partner, or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. BORROWER AGREES TO THE TERMS OF THE NOTE.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

BORROWER:

CLEAR VISION EXPRESS, LTD.

OPTICAL EXPRESS, LLC, General Partner of Clear Vision Express, Ltd.

By: _____
Michael Hochman, Sole Manager of Optical Express, LLC

LaserPro, Ver. 17.1.0.023 Copr. D+H USA Corporation 1997, 2017. All Rights Reserved. - TX C:\LaserPro\CFI\LPL\D20.FC TR-3007214 PR-23