# Exhibit B

# SETTLEMENT AGREEMENT

THIS SETTLEMENT AGREEMENT (the "**Agreement**") is entered into by and between:

(i)     Michael A. Hochman M.D., P.A.
(ii)    Clear Vision Express, Ltd.
(iii)   Clear Vision Express Tucson, LLC
(iv)    CVE Arizona Optometry, LLC
(v)     Michael A. Hochman,
(vi)    SanJuana Hochman (nka Anna Hochman), and
(vii)   Michael A. Hochman Family Limited Partnership

(in their capacity as borrowers and/or guarantors as defined herein, and collectively, "**Obligors**") and BBVA USA, an Alabama banking corporation formerly known as Compass Bank ("**BBVA**" or "**Lender**") (each a "**Party**" and collectively, the "**Parties**"), effective as of April 5, 2021 (the "**Effective Date**").

## RECITALS:

A.     **WHEREAS**, Obligors obtained various loans (collectively, the "**Loans**") from BBVA, each evidenced by a promissory note executed by one or more Obligors as borrowers (each and all of the notes, together with any respective renewals, modifications, or extensions of the same, collectively, the "**Notes**");

B.     **WHEREAS**, in connection with the Loans, Obligors executed certain loan agreements (together with any renewals, modifications, extensions or change in terms agreements, collectively, the "**Loan Agreements**");

C.     **WHEREAS**, pursuant to certain guaranty agreements (collectively, the "**Guaranties**"), executed by one or more Obligors as guarantors, each guarantor unconditionally and absolutely guaranteed payment of one or more of the Notes;

D.     **WHEREAS**, in order to secure the indebtedness owed to BBVA on the Loans, one or more Obligors granted BBVA certain security interests and liens, covering and constituting a first lien on all their respective accounts, equipment, inventory, general intangibles and other property (collectively, the "**Collateral**"), as evidenced and more specifically defined in each Security Agreement executed by one or more Obligors in favor of BBVA (together with any renewals, modifications, extensions, or change in terms agreements, collectively, the "**Security Agreements**");

E.     **WHEREAS**, the Note, Loan Agreements, Guaranties, and Security Agreements are listed and more fully described in Exhibit A, which is incorporated herein by reference;

F.     **WHEREAS**, the Note, Loan Agreements, Guaranties, Security Agreements, and all other documents or agreements executed in connection with the Loans, together with their

respective renewals, modifications, extensions or change in terms agreements shall be referred to collectively, as the "**Loan Documents**");

      G.    **WHEREAS**, the following chart accurately summarizes each of the Loans, the date the Loans were made, the original loan amount on each of the Notes, and the identity of each Obligor that signed each of the Notes, Guaranties, and Security Agreements:

| Date | Loan No. | Original Loan Amount | Note Executed by: | Guaranty Agreement Executed by: | Security Agreement Executed by: |
|---|---|---|---|---|---|
| 07/06/16 | 9879 | $400,000.00 | Michael A. Hochman, MD, PA | Michael A. Hochman | Michael A. Hochman, MD, PA |
| 07/06/16 | 9828 | $1,200,000.00 | Clear Vision Express, LTD | (1) Michael A. Hochman, MD, PA<br>(2) Michael A. Hochman | Clear Vision Express, LTD |
| 06/09/17 | 66-26 | $400,000.00 | Clear Vision Express, LTD | See Guaranty Agreements executed with Loan 9828 | Clear Vision Express, LTD |
| 07/19/17 | 41-18 | $1,125,000.00 | Clear Vision Express Tucson, LLC | (1) Clear Vision Express, LTD<br>(2) CVE Arizona Optometry, LLC<br>(3) Michael A. Hochman, MD, PA<br>(4) Michael Avery Hochman | Clear Vision Express Tucson, LLC |
| 07/19/17 | 41-59 | $1,175,000.00 | Clear Vision Express Tucson, LLC | (1) Clear Vision Express, LTD<br>(2) CVE Arizona Optometry, LLC<br>(3) Michael A. Hochman, MD, PA<br>(4) Michael Avery Hochman | Clear Vision Express Tucson, LLC |
| 07/19/17 | 58-34 | $150,000.00 | CVE Arizona Optometry, LLC | (1) Clear Vision Express, LTD<br>(2) Clear Vision Express Tucson, LLC<br>(3) Michael A. Hochman, MD, PA<br>(4) Michael A. Hochman | CVE Arizona Optometry, LLC |
| 07/19/17 | 58-42 | $315,000.00 | CVE Arizona Optometry, LLC | (1) Clear Vision Express, LTD<br>(2) Clear Vision Express Tucson, LLC<br>(3) Michael A. Hochman, MD, PA<br>(4) Michael Avery Hochman | CVE Arizona Optometry, LLC |
| 10/15/19 | 6727 | $1,000,000.00 | (1) Michael Hochman<br>(2) SanJuana Hochman | Michael A. Hochman Family Limited Partnership | |

      H.    **WHEREAS**, in connection with Loan No. ▮▮▮41-18, Clear Vision Express Tucson, LLC and BBVA entered into a certain interest rate swap, as evidenced by the ISDA 2002 Master Agreement dated as of June 19, 2017, and the letter agreement dated July 19, 2017 (the "**Tucson Swap Agreement**");

      I.    **WHEREAS**, in connection with Loan No. ▮▮▮58-42, CVE Arizona Optometry, LLC and BBVA entered into a certain interest rate swap, as evidenced by the ISDA 2002 Master Agreement dated as of June 19, 2017, and the letter agreement dated July 19, 2017 (the "**Arizona Swap Agreement**");

      J.    **WHEREAS**, each of the Obligors, in their capacities as borrower and/or guarantors, are in default under the terms of the Loan Documents for each of the Loans;

      K.    **WHEREAS**, after each of the Obligors, in their capacities as borrower and/or guarantors defaulted under the Loan Documents, and after proper notice and opportunity to cure

Obligors failed to cure or pay the outstanding balances on the Loans;

L.    **WHEREAS**, all the Loans have matured according to the original terms of the Notes and/or through the bank's acceleration of the maturity date post-default;

M.    **WHEREAS**, the balances owed on Loans are as follows:

| Loan No. | Outstanding Balance thru February 4, 2021 (thru April 1, 2021 for Loan Ending 58-42) | | | |
|---|---|---|---|---|
| | Principal | Interest | Late/Other Charges | Total |
| 9879 | $ 202,040.63 | $ 3,496.22 | $ 1,392.90 | $ 206,929.75 |
| 9828 | $ 604,005.30 | $ 23,027.70 | $ 5,015.28 | $ 632,048.28 |
| 66-26 | $ 400,000.00 | $ 19,020.44 | | $ 419,020.44 |
| 41-18 | $ 759,123.43 | $ 26,980.78 | $ 8,429.55 | $ 794,533.76 |
| 41-59 | $ 1,175,000.00 | $ 52,295.66 | | $ 1,227,295.66 |
| 58-34 | $ 150,000.00 | $ 7,353.13 | | $ 157,353.13 |
| 58-42 | $ 165,027.79 | $ 215.65 | | $ 165,243.44 |
| 6727 | $ 996,825.94 | $ 26,181.40 | $ 245.00 | $ 1,023,252.34 |
| **TOTAL** | **$ 4,452,023.09** | **$ 158,570.98** | **$ 15,082.73** | **$ 4,625,676.80** |

which amounts shall continue accruing interest, late charges, and expenses until paid (collectively, the "**Loan Balances**");

N.    **WHEREAS**, Lender has incurred and will continue to incur attorney's fees and costs to collect on the Loans and enforce the Loan Documents, and in the preparation, negotiation, and execution of this Agreement, which are due and owing under the Loan Documents and shall be added to the Loan Balances stated in Recital M; and

O.    **WHEREAS**, BBVA has agreed to refrain from taking any further actions to enforce its rights and remedies under the Loan Documents, provided that and so long as Obligors comply with the terms and conditions set forth herein.

**NOW THEREFORE**, in consideration of the recitals set forth above, the terms and conditions set forth herein and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties hereby agree as follows:

## TERMS

1.     **Acknowledgment of Recitals**. The Parties acknowledge that the Recitals set forth above are true and correct statements of fact and are hereby incorporated by reference.

2.     **Conditions Precedent**. This Agreement shall become effective only after BBVA receives the following:

        (a)     by <u>April 5, 2021</u>, an executed original of this Agreement;

        (b)     by <u>April 5, 2021</u>, corporate resolutions from each Obligor, or any signatory thereof, that is a corporate entity, evidencing corporate approval of this Agreement; and

        (c)     by <u>April 5, 2021</u>, payment of the accrued and unpaid interest owed thru February 4, 2021 (or thru April 1, 2021 for Loan      58-42), as specified in Recital M, and as required under Paragraph 4(a) below.

3.     **Term of Agreement**. Subject to the terms and conditions of this Agreement, this Agreement shall terminate on the *earlier* of: (i) December 31, 2021; or (ii) a breach by any of the Obligors of any term or condition of this Agreement (the "**Term**").

4.     **Payments During Term of Agreement**.

        (a)     Obligors agree to pay all accrued and unpaid interest owed thru <u>February 4, 2021</u> (or thru <u>April 1, 2021</u> for Loan     58-42), as specified in Recital M, contemporaneously with the execution of this Agreement by April 5, 2021.

        (b)     Obligors agree to make monthly payments of principal, commencing on <u>April 15, 2021</u>, and continuing each consecutive month thereafter on the 15th of every month through <u>December 15, 2021</u>. During the Term, the monthly payment amount due on each of the Loans shall be as follows:

| Loan No. | Monthly Payment |
|---|---|
| ▮9879 | $ 2,405 |
| ▮9828 | $ 7,191 |
| ▮6-26 | $ 4,762 |
| ▮41-18 | $ 9,037 |
| ▮41-59 | $ 13,988 |
| ▮58-34 | $ 1,786 |
| ▮8-42 | $ 1,965 |
| ▮6727 | $ 11,867 |
| | $ 53,001 |

Each monthly payment of principal is calculated based on a 7-year amortization schedule based on the principal amount outstanding on each of the Notes as of <u>February 4, 2021</u> (or as of <u>April 1, 2021</u> for Loan ▮▮▮58-42). BBVA reserves the right to apply any payments received to the indebtedness owed under each of the Loans in any manner that it deems fit in its sole discretion.

        (c)      Payment of all late fees and other charges listed in Recital M or incurred thereafter and the attorney's fees and costs incurred by the Lender before and after the execution of this Agreement shall be deferred and payable on December 31, 2021, unless the Agreement is terminated earlier, in which case such amounts shall be immediately due and payable.

     5.    **Accruing Post-Maturity Interest**. The Parties agree that the post-maturity and/or post-acceleration rate of interest is 18% per annum on each of the Loans. Provided Obligors are in full compliance with the terms hereof, the Parties agree that interest owed by Obligors on each of the Loans will be calculated as follows: (i) thru February 4, 2021 (or thru April 1, 2021 for Loan ▮▮▮58-42), at the non-default contract rate corresponding to each of the Loans; and (ii) beginning February 5, 2021 (or April 2, 2021 for Loan ▮▮▮58-42) through the end of the Term, at the rate of <u>4% per annum</u>. The payment of interest accruing at the rate of 4% per annum on each of the Loans beginning February 5, 2021 (or April 2, 2021 for Loan ▮▮▮58-42) through the end of the Term shall be deferred and payable on December 31, 2021, unless the Agreement is terminated earlier. If Obligors fail to make any payment required under this Agreement or breach any other term or condition hereunder, Obligors agree that they will be liable for paying interest at the rate of 18% per annum from the date of maturity or acceleration of each of the Notes until the indebtedness under all the Loan Documents is fully paid, which interest shall be immediately due and payable.

     6.    **Full Payoff**. Obligors agree to pay the full indebtedness owed on the Loans, including but not limited to unpaid principal, accruing interest as provided herein, and all late charges, fees, expenses, and attorney's fees and costs, as provided for under the Loan Documents and herein, in a balloon payment on or before <u>December 31, 2021</u>.

        (a)      If Obligors pay the full indebtedness owed on the Loans on or before June 30, 2021, then 100% of accrued interest at the rate of 4% per annum from February 5, 2021 (or from April 2, 2021 for Loan ▮▮▮58-42) through June 30, 2021 shall be cancelled and forgiven.

        (b)      If the Obligors pay the full indebtedness owed on the Loans on or before September 30, 2021, then 50% of the accrued interest at the rate of 4% per annum from February 5, 2021 (or from April 2, 2021 for Loan ▮▮▮58-42) through September 30, 2021 shall be cancelled and forgiven.

     7.    **Swap Agreements**. The Tucson Swap Agreement and the Arizona Swap Agreement shall be voluntarily terminated by Clear Vision Express Tucson, LLC and CVE Arizona Optometry, LLC, respectively, contemporaneously with the execution of this Agreement. If the value is positive, it will be applied to the balance owed on the corresponding Loans, and if the value is negative, Clear Vision Express Tucson, LLC and/or CVE Arizona Optometry, LLC shall pay any balance owed on their respective Swap Agreements in accordance with the same.

8.     **Method of Payment**. All payments contemplated under this Agreement shall be remitted on or before the due date, and delivered as follows:

      (a)    In certified funds (cashier check or money order – payable to "BBVA USA") delivered to:

> BBVA USA
> Attn: LDFC ARMS
> 8333 Douglas Ave., 2nd Floor
> Dallas, Texas 75225-5845
> TX-DA-DG-LDF

      (b)    By wire transfer:

> BBVA USA
> ABA/Routing No.: 113010547
> Account No.: ▇▇▇3036
> Attn: DO NOT POST Contact:
> LDFCARMSDallas.us@bbva.com

> Ref: Hochman

9.     **Collateral Disclosures and Access**. Within thirty (30) days of the Effective Date, Obligors shall provide BBVA: (i) a list of all Collateral, that describes the Collateral, provides an estimated market value, and provides the current location of the same; and (ii) a copy of any appraisal reports that Obligors may have related to the Collateral. In addition, BBVA shall be permitted to access, at reasonable and mutually agreeable dates/times, to each location where Collateral is located to inspect, photograph, and/or digitally record the Collateral.

10.     **Affirmative Covenants**. In addition to the other provisions and requirements in this Agreement, Obligors covenant as follows:

      (a)    Obligors shall timely make their respective payments in accordance with the terms of this Agreement;

      (b)    During the Term of this Agreement, Obligors shall provide BBVA any financial statements, tax returns, or other financial reports that BBVA may request of Obligors from time to time; and

      (c)    Obligors shall comply with all other covenants and obligations in any of the Loan Documents, except as expressly modified herein.

11.     **Additional Negative Covenants**. In addition to any negative covenants in the Loan Documents, Obligors covenant as follows:

(a) They shall not take any action, nor shall they assist or encourage any other person or entity to take any action, to challenge or interfere with BBVA's liens or the exercise of any of BBVA's rights under this Agreement or any of the Loan Documents;

(b) They shall not create, grant, or allow any new security interest or lien on any portion of the Collateral, except: (i) liens and security interests in favor of BBVA; and

(c) They shall not take any action that would cause any material adverse effect to occur to the financial condition of the Obligors or in the value of the Collateral.

12. **Acknowledgments**. Obligors acknowledge and agree as follows:

(a) This Agreement in no way affects, impairs, or diminishes any indebtedness owed to BBVA on the Loans and under the terms of the Loan Documents, except as expressly modified herein;

(b) All documents, instruments and agreements evidencing the Loans are valid, and are enforceable, except as expressly modified herein;

(c) There are no existing defenses, offsets, claims or counterclaims to the enforcement of any of the Loan Documents, or any other documents related to the Loans;

(d) All representations made by Obligors to BBVA in this Agreement or at any time prior to this Agreement in connection with the Loans or with this Agreement are true and correct, and not misleading in any manner; and

(e) Michael A. Hochman and SanJuana Hochman nka Anna Hochman expressly warrant that they are not a "consumer" with regard to Loan No. ▆6727, as they, at all times, intended to use and did use all loan proceeds solely for business purposes, and not personal, family or household purposes. Accordingly, Michael A. Hochman and SanJuana Hochman nka Anna Hochman understand and agree that any federal or state laws or regulations intended for the protection of consumers or governance of transactions involving consumers or consumer loans do not apply to any of the Loans or this Agreement, and hereby expressly waive any such protections.

13. **Cross-Collateralization**.

(a) Obligors hereby agree and reaffirm that any and all Collateral securing each of the Loans shall secure any and all of the other Loans, and any other obligations or debts, of any type or nature, of the Obligors or of any affiliated entity or entity owned or controlled by Obligors, to BBVA, and herein acknowledge and warrant that this Agreement constitutes adequate and sufficient consideration for the same; and

(b) Obligors acknowledge and agree that Lender may foreclose its liens on the Collateral upon a breach of this Agreement, Obligors' failure to pay the Loans in accordance herewith, Obligors' default under any of the Loans, Loan Documents, or any other loans or

agreements with BBVA, or the default of any affiliated entity or entity owned or controlled by Obligors under any other loan or agreement with BBVA, except as expressly modified herein.

14. **Cross-Default**. Obligors agree that a breach of this Agreement shall constitute an event of default under each of the Loans and under any other loan or agreement between Obligors (or of any affiliated entity or entity owned or controlled by Obligors) and BBVA, and the occurrence of an event of default under any of the Loans, except as expressly modified herein, shall constitute a breach under this Agreement and under any other loan or agreement between Obligors (or of any affiliated entity or entity owned or controlled by Obligors) and BBVA, and Lender shall thereafter have all rights and remedies available upon the occurrence of an event of default under such Loans, Loan Documents and this Agreement.

15. **Remedies Upon Default or Termination of this Agreement**. Upon a breach of this Agreement by Obligors or the termination of this Agreement, the Agreement shall immediately and automatically terminate without further notice or further demand on Obligors, and BBVA shall be entitled immediately to pursue any and all remedies available to it under any of the Loan Documents, this Agreement, and/or at law or in equity. Upon a breach of this Agreement by Obligors, BBVA shall have no further obligations, if any, under this Agreement.

16. **No Waiver by Lender**. This Agreement does not constitute a waiver of any of the rights or remedies of BBVA under any of the Loan Documents, except as expressly modified herein.

17. **Notice and Opportunity to Cure**. For any breach of this Agreement, other than a payment default, BBVA shall provide Obligors notice of default and a ten (10) day opportunity to cure the default. For a payment default, Obligors waive any notice and opportunity to cure, and agree that BBVA shall not provide Obligors any notice or opportunity to cure, and shall be entitled to exercise its rights under any of the Loan Documents or this Agreement immediately.

18. **Effect of Bankruptcy and Other Events**. Obligors shall be in breach of this Agreement if any of them: (i) admit in writing its/his/her inability to pay its/his/her debts generally as they become due; (ii) file a petition or answer in bankruptcy seeking to be declared bankrupt, or seeking reorganization or an arrangement or otherwise to take advantage of any State or Federal bankruptcy or insolvency law; (iii) make an assignment for the benefit of creditors; (iv) file a petition for or consents to the appointment of a receiver for the assets or any part thereof, belonging to any one of the Obligors; (v) is adjudicated bankrupt; or (vi) has an order, decree or judgment, without Obligors' consent, entered by a court of competent jurisdiction appointing a receiver of the Collateral or approving a petition filed against any of the Obligors seeking reorganization or an arrangement of any of the Obligors under any bankruptcy or insolvency law, and such order, decree or judgment is not vacated, set aside or stayed within sixty (60) days from the date of entry.

19. **Release**. Obligors each RELEASE, ACQUIT, RELINQUISH and FOREVER DISCHARGE BBVA and its respective insurers, successors, agents, consultants, shareholders, attorneys, current and former officers, directors, employees, legal representatives, affiliates, assigns, successors and third party entities acting on their behalf (all of such parties being released being hereinafter referred to as the "**Lender Released Parties**"), from any and all claims, disputes,

demands, losses, liabilities, damages, causes of action, expenses and attorney's fees of any nature, type or character whatsoever, whether in contract or in tort, liquidated, unliquidated, fixed, contingent, matured, unmatured, legal or equitable, whether known or unknown, whether they be direct actions, counter-claims or cross-actions, whether for compensatory, punitive, exemplary, injunctive, or any other damages of any kind or character, that may have or have accrued or may accrue in the future, arising from or related to the Loans or the Loan Documents, including but without in any manner limiting any of the foregoing: (i) any acts or omissions of any of the Lender Released Parties with respect to the Loans or the Loan Documents; (ii) claims for negligence, breach of contract, Deceptive Trade Practices Act violations, fraud or misrepresentation, promissory estoppel, real or personal property damage, lender liability, violation of Tex. Bus. Com. Code § 9.625, breach of fiduciary duty, claims for breach of the duty of good faith and fair dealing, lost profits, lost income and/or any other economic damages, personal injury, or mental anguish; (iii) claims arising out of violation of any statute; or (iv) any and all claims that they ever had or now have against the Lender Released Parties (collectively "**Claims**").

20.    **HOLD HARMLESS BY OBLIGORS.  IN FURTHER CONSIDERATION FOR THIS AGREEMENT, OBLIGORS EACH AGREE TO INDEMNIFY AND HOLD HARMLESS THE LENDER RELEASED PARTIES FROM ANY AND ALL CLAIMS, DIFFERENCES, ATTORNEY'S FEES, DEMANDS, LOSSES, LIABILITIES, DAMAGES, CAUSES OF ACTION, OF ANY NATURE, TYPE OR CHARACTER WHATSOEVER, WHETHER IN CONTRACT OR IN TORT, LIQUIDATED, UNLIQUIDATED, FIXED, CONTINGENT, MATURED, UNMATURED, LEGAL OR EQUITABLE, WHETHER KNOWN OR UNKNOWN, WHETHER THEY BE DIRECT ACTIONS, COUNTERCLAIMS OR CROSS-ACTIONS, WHETHER FOR NEGLIGENCE, STRICT LIABILITY, COMPENSATORY, PUNITIVE, EXEMPLARY, INJUNCTIVE, OR ANY OTHER DAMAGES OF ANY KIND OR CHARACTER, THAT MAY HAVE OR HAVE ACCRUED OR MAY ACCRUE IN THE FUTURE IN ANY WAY RELATING TO OR OTHERWISE IN CONNECTION IN ANY WAY WITH THE CLAIMS RELEASED BY THEM OR BY ANYONE CLAIMING BY, THROUGH OR UNDER THEM.**

21.    **No Release by BBVA**. This Agreement in no way constitutes a release by BBVA of Obligors or of the indebtedness or obligations arising under the Loans or the Loan Documents.

22.    **Controlling Agreement**. In the event of any conflict between this Agreement and any of the Loan Documents, the provisions of this Agreement shall control.

23.    **Confidentiality**. Obligors agree to keep the terms of this Agreement strictly confidential and shall not disclose the terms to anyone other than their counsel and as follows: (i) accountants or auditors for purposes of preparing financial statements and tax returns, (ii) in response to any subpoena or other legal process requiring the production or disclosure hereof, (iii) the IRS, or (iv) otherwise as required by applicable law or regulation. Obligors agree not to in any way publicize, disclose, or discuss the terms of this dispute or this Agreement to or with persons other than those named herein. While not limiting the generality of the foregoing sentence, disclosure includes a statement, written or oral or electronic, to any person, third-party, newspaper, magazine, radio or television station, clients or potential clients, employees (past or present), competitors, or any internet site, including but not limited to blogs, Facebook, or Twitter.

24. **Effect of Agreement**. All prior oral and written communications, commitments, alleged commitments, promises, alleged promises, agreements, and alleged agreements by or among BBVA and Obligors are hereby merged into this Agreement, and shall not be enforceable unless expressly set forth in this Agreement. This Agreement may not be modified except in writing signed by all parties hereto.

25. **Counterparts**. This Agreement may be executed in one or more counterparts, each of which shall be deemed to be an original and all of which shall constitute one and the same instrument. Lender requires original signatures on the Agreement.

26. **Legal Counsel**. Obligors hereby warrant and represent to BBVA that they have consulted with and received advice from legal counsel of their choice, and/or have been given the opportunity to do so, with respect this Agreement. Without limiting the generality of the foregoing, Obligors acknowledge that they have executed this Agreement voluntarily without duress.

27. **Warranties of Capacity to Execute Agreement**. In return for the consideration and promises and obligations contained herein, each Party executing this Agreement expressly warrants and represents that:

        (a)     he/she/it is legally competent to execute this Agreement;

        (b)     such Party has not assigned, pledged or otherwise in any manner whatsoever, sold or transferred, either by instrument, in writing or otherwise, any right, title, interest in any of the Claims released by such Party;

        (c)     no representations regarding the nature and extent of legal liability or financial responsibility of any Party has induced such party to enter into this Agreement;

        (d)     such Party has taken into consideration not only the ascertained damages, but also the possibility that additional damages may be ascertained, so that consequences not now anticipated may result from the Claims released hereby; and

        (e)     each person signing the Agreement represents and warrants that s/he has been authorized and empowered to sign this Agreement on behalf of the Party the person purports to represent and that this Agreement is lawful and binding obligations of the Party on whose behalf the person is signing.

28. **Notices.** Any notice required or allowed to be given hereunder shall be complete upon receipt by the party to whom notice is directed and shall be mailed by standard mail, postage prepaid, and sent by e-mail to the following addresses:

**If to Obligors, at:**

Michael A. Hochman, M.D., P.A.
5313 McPherson Road
Laredo, Texas 78041

Clear Vision Express, Ltd.
5401 McPherson Road
Laredo, Texas 78041

CVE Vision Express Tucson, LLC
1802 South Zapata Highway
Laredo, Texas 78046

CVE Arizona Optometry, LLC
1802 South Zapata Highway
Laredo, Texas 78046

Michael A. Hochman
██████████████
Laredo, Texas ██████

SanJuana Hochman nka Anna Hochman
██████████████
Laredo, Texas ██████

Michael A. Hochman Family Limited Partnership
██████████████
Laredo, Texas ██████

*with a copy to (which shall not constitute notice):*

Leslie M. Luttrell
Luttrell + Carmody Law Group
100 N.E. Loop 410, Suite 615
San Antonio, Texas 78216
luttrell@lclawgroup.net

**If to BBVA USA, at:**

BBVA USA
Attn: Kenneth Daigrepont, CPA
2200 Post Oak Blvd., 21st Floor
Houston, Texas 77056
TX-HO-HT-ARM

*with a copy to (which shall not constitute notice):*

Sarah Santos
Davis & Santos, P.C.
719 S. Flores Street

San Antonio, Texas 78204
Fax: 210-200-8395
E-mail: _ssantos@dslawpc.com_

or to such other address as shall be designated by such Party in a written notice to the other Parties.

29.    **Survival of Representations, Warranties and Covenants.**  All representations, warranties and covenants contained herein or in any of the Loan Documents or made in writing by Obligors in connection herewith or therewith shall survive the execution and delivery of this Agreement and will bind and inure to the benefit of the respective successors and assigns of the Parties hereto, whether so expressed or not.  No investigation at any time made by or on behalf of BBVA shall diminish BBVA's right to rely thereon.

30.    **Successors and Assigns, Participations**.  All covenants, promises, and agreements by or on behalf of Obligors or BBVA contained in this Agreement and in any of the Loan Documents shall bind and inure to the benefit of their respective successors and permitted assigns. Obligors may not assign or transfer any of their rights or obligations under this Agreement or any of the Loan Documents without the prior written consent of BBVA.

31.    **Further Assurances**.  Obligors agree to execute any further instruments and take further action as BBVA reasonably requests to enforce and/or to effectuate the purposes of this Agreement.

32.    **Covenant Not to Sue or to Seek Injunctive Relief**.  Obligors agree not to file any lawsuit or application for a temporary restraining order, temporary injunction, permanent injunction, or any other suit for injunctive or declaratory relief in relation to the Loans or any of the Loan Documents, or which would seek to prohibit BBVA from foreclosing on the Collateral upon the occurrence of a breach of this Agreement, or other event of default under any of the Loans or Loan Documents, except as expressly modified herein.

33.    **Attorney's Fees, Costs and Expenses.**  Obligors hereby agree to pay BBVA all reasonable costs and expenses, including without limitation reasonable attorney's fees and expenses, court costs, filing or recording fees or any other expenses, incurred by BBVA: (i) in connection with the preparation, negotiation, and execution of this Agreement; (ii) in connection with the collection or enforcement of the Loans and the Loan Documents before or after the execution of this Agreement; (iii) in connection with BBVA's enforcement of any term of this Agreement.

34.    **WAIVER OF RIGHTS TO JURY TRIAL.  THE PARTIES TO THIS KNOWINGLY, VOLUNTARILY, INTENTIONALLY, IRREVOCABLY, AND UNCONDITIONALLY WAIVE ALL RIGHTS TO TRIAL BY JURY IN ANY ACTION, SUIT, PROCEEDING, COUNTERCLAIM, OR OTHER LITIGATION THAT RELATES TO OR ARISES OUT OF THIS AGREEMENT, THE LOANS, THE LOAN DOCUMENTS, THE GUARANTIES, OR THE ACTS OR OMISSIONS OF ANY PARTY OR ITS AGENTS OR EMPLOYEES TO THIS AGREEMENT IN THE ENFORCEMENT OF ANY OF THE TERMS OR PROVISIONS THEREOF.  ALL PARTIES TO THIS AGREEMENT**

ACKNOWLEDGE AS AGREED, THE PROVISIONS OF THIS SECTION ARE A MATERIAL INDUCEMENT FOR EACH PARTY ENTERING INTO THIS AGREEMENT. THE PARTIES HEREBY AGREE THAT EACH OF THE LOANS, THE LOAN DOCUMENTS, AND THE GUARANTIES, IS HEREBY AMENDED.

35. **FINAL AGREEMENT.** THIS WRITTEN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES. THE PARTIES ACKNOWLEDGE THAT THEY HAVE BEEN REPRESENTED BY COUNSEL OF THEIR CHOOSING OR HAVE OTHERWISE HAD THE OPPORTUNITY TO SEEK ADVICE OF COUNSEL REGARDING THIS AGREEMENT AND THAT THEY ARE NOT RELYING ON ANY REPRESENTATIONS NOT CONTAINED IN THIS AGREEMENT OF THE PARTIES HERETO IN THE DECISION TO ENTER INTO THE AGREEMENT.

36. **Severability**. In the event any one or more of the provisions contained in this Agreement, for any reason, be held to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provision of the Agreement.

37. **Construction**. Each Party to this Agreement has participated in its drafting, and the Agreement shall not be construed against any Party by reason thereof.

IN WITNESS, the Parties to this Agreement hereto have caused this Agreement to be duly executed as of the Effective Date.

*[Remainder of Page Intentionally Left Blank - Signatures on Following Pages]*

**OBLIGOR
(IN ITS CAPACITY OF BORROWER ON
LOAN NO. █████9879 AND GUARANTOR
ON LOAN NOS. █████9828, █████66-26,
█████41-18, █████41-59, █████58-34,
█████58-42):**

**MICHAEL A. HOCHMAN, M.D., P.A.
(a Texas Professional Association)**

By: _____

    Michael A. Hochman

Its: President_____

THE STATE OF Texas   §

                    §

COUNTY OF Webb   §

SUBSCRIBED AND SWORN TO BEFORE ME on April 5th, 2021, by Michael A. Hochman, the President of Michael A. Hochman, M.D., P.A., a Texas Professional Association, on behalf of and as the authorized representative of Michael A. Hochman, M.D., P.A.

Date: 04/05/2021

Monica C. Delgado

Notary Public, State of Texas

MONICA CHARMAINE DELGADO
NOTARY PUBLIC
ID# 132445914
State of Texas
Comm. Exp. 04-21-2024

**OBLIGOR
(IN ITS CAPACITY OF BORROWER ON
LOAN NOS. ███9828, ███66-26 AND
GUARANTOR ON LOAN NOS. ███41-
18, ███41-59, ███58-34, ███58-42):**

**CLEAR VISION EXPRESS, LTD.**

By: Optical Express, LLC
Its: General Partner

By: _[signature]_

    Michael A. Hochman
Its: Managing Member

THE STATE OF Texas   §
                    §
COUNTY OF Webb   §

SUBSCRIBED AND SWORN TO BEFORE ME on April 5th, 2021, by Michael A. Hochman, the Managing Member of Optical Express, LLC, the General Partner of Clear Vision Express, Ltd., on behalf of and as the authorized representative of Clear Vision Express, Ltd.

Date: 04/05/2021

_[signature]_
Notary Public, State of Texas

MONICA CHARMAINE DELGADO
NOTARY PUBLIC
ID# 132445914
State of Texas
Comm. Exp. 04-21-2024

**OBLIGOR**
**(IN ITS CAPACITY OF BORROWER ON**
**LOAN NOS. ███ 41-18, ███ 41-59 AND**
**GUARANTOR ON LOAN NOS. ███ 58-**
**34, ███ 58-42):**

**CLEAR VISION EXPRESS TUCSON, LLC**

By: _____

    Michael A. Hochman
Its: Managing Member _____

THE STATE OF Texas   §

COUNTY OF Webb   §
               §

SUBSCRIBED AND SWORN TO BEFORE ME on April 5th , 2021, by Michael A. Hochman, the Managing Member of Clear Vision Express Tucson, LLC, on behalf of and as the authorized representative of Clear Vision Express Tucson, LLC.

Date: 04/05/2021 _____

          Monica C. Delgado
          Notary Public, State of Texas

MONICA CHARMAINE DELGADO
NOTARY PUBLIC
ID# 132445914
State of Texas
Comm. Exp. 04-21-2024

**OBLIGOR**
**(IN ITS CAPACITY OF BORROWER ON**
**LOAN NOS.** ███**58-34,** ███**58-42 AND**
**GUARANTOR ON LOAN NOS.** ███**41-**
**18,** ███**41-59):**

**CVE ARIZONA OPTOMETRY, LLC**

By:_____

Michael A. Hochman
Its: Managing Member

THE STATE OF _Texas_ §
§
COUNTY OF _Webb_ §

SUBSCRIBED AND SWORN TO BEFORE ME on April 5th, 2021, by Michael A. Hochman, the Managing Member of CVE Arizona Optometry, LLC, on behalf of and as the authorized representative of CVE Arizona Optometry, LLC.

Date: 04/05/2021

_____
Notary Public, State of Texas

MONICA CHARMAINE DELGADO
NOTARY PUBLIC
ID# 132445914
State of Texas
Comm. Exp. 04-21-2024

**OBLIGOR**
**(IN HIS CAPACITY OF BORROWER ON**
**LOAN NO. ███████ 6727 AND GUARANTOR**
**ON LOAN NOS. ███████ 9879, ███████ 9828,**
**███████ 66-26, ███████ 41-18, ███████ 41-59,**
**███████ 58-34, ███████ 58-42):**

**MICHAEL A. HOCHMAN**

*[signature]*

THE STATE OF Texas        §
COUNTY OF Webb            §
                         §

SUBSCRIBED AND SWORN TO BEFORE ME on April 5th, 2021, by Michael A. Hochman.

Date: 04|05|2021

_____
Notary Public, State of Texas

MONICA CHARMAINE DELGADO
NOTARY PUBLIC
ID# 132445914
State of Texas
Comm. Exp. 04-21-2024

**OBLIGOR**
**(IN HER CAPACITY OF BORROWER ON**
**LOAN NO.** ▮▮▮▮**6727):**

**SANJUANA HOCHMAN NKA ANNA**
**HOCHMAN**

THE STATE OF Texas          §
                            §
COUNTY OF Webb              §

SUBSCRIBED AND SWORN TO BEFORE ME on April 5th, 2021, by SanJuana Hochman
nka Anna Hochman.

Date: 04/05/2021

Nerica C. Delgado
Notary Public, State of Texas

MONICA CHARMAINE DELGADO
NOTARY PUBLIC
ID# 132445914
State of Texas
Comm. Exp. 04-21-2024

**OBLIGOR**
**(IN ITS CAPACITY OF GUARANTOR ON**
**LOAN NO. ▮▮▮▮6727):**

**MICHAEL A. HOCHMAN FAMILY**
**LIMITED PARTNRSHIP**

By: Hochman Family General Partner, LLC
Its: General Partner

By: _____

Michael A. Hochman
Its: President _____

THE STATE OF  Texas      §
                         §
COUNTY OF  Webb          §

SUBSCRIBED AND SWORN TO BEFORE ME on April 5th, 2021, by Michael A. Hochman, the President of Hochman Family General Partner, LLC, the General Partner of Michael A. Hochman Family Limited Partnership, on behalf of and as the authorized representative of Michael A. Hochman Family Limited Partnership.

Date: 04/05/2021

Notary Public, State of  Texas



MONICA CHARMAINE DELGADO
NOTARY PUBLIC
ID# 132445914
State of Texas
Comm. Exp. 04-21-2024

**BBVA USA**

By: _____
Its: _____

THE STATE OF TEXAS     §
                             §
COUNTY OF _Harris_     §

SUBSCRIBED AND SWORN TO BEFORE ME on _9th of Apl_ 2021, by _Ken_
 _Daigrepont_ , the _VP_ for BBVA USA, on behalf of and as the
authorized representative of BBVA USA.

Date: _4/9/2021_

_____
Notary Public, State of Texas

BLANCA L. MEJIA
NOTARY PUBLIC - STATE OF TEXAS
ID # 12972312-9
COMM. EXP. 02-21-2022

## EXHIBIT A

1. Loan No. ▇▇9879:
   a. Promissory Note, dated July 6, 2016, in the amount of $400,000, executed by Michael A. Hochman M.D., P.A. in favor of Compass Bank (n/k/a BBVA USA), together with any respective renewals, modifications or extensions of the same
   b. Loan Agreement, dated July 6, 2016, executed by and between Michael A. Hochman M.D., P.A., Michael A. Hochman, and Compass Bank (n/k/a BBVA USA), together with any renewals, modifications, extensions or change in terms to the same
   c. Commercial Security Agreement, dated July 6, 2016, executed by Michael A. Hochman M.D., P.A. in favor of Compass Bank (n/k/a BBVA USA), together with any renewals, modifications, extensions, or change in terms to the same
   d. Guaranty, dated July 6, 2016, executed by Michael A. Hochman, together with any other guaranty agreements executed in connection with the loan

2. Loan No. ▇▇9828:
   a. Promissory Note, dated July 6, 2016, in the amount of $1,200,000, executed by Clear Vision Express, Ltd. in favor of Compass Bank (n/k/a BBVA USA), together with any respective renewals, modifications or extensions of the same
   b. Loan Agreement, dated July 6, 2016, executed by and between Clear Vision Express, Ltd., Michael A. Hochman, Michael A. Hochman M.D., P.A., and Compass Bank (n/k/a BBVA USA), together with any renewals, modifications, extensions or change in terms to the same
   c. Security Agreement (Equipment), dated July 6, 2016, executed by Clear Vision Express, Ltd. in favor of Compass Bank (n/k/a BBVA USA), together with any renewals, modifications, extensions, or change in terms to the same
   d. Guaranty, each dated July 6, 2016, executed by Michael A. Hochman and Michael A. Hochman M.D., P.A., together with any other guaranty agreements executed in connection with the loan

3. Loan No. ▇▇66-26:
   a. Promissory Note, dated June 9, 2017, in the amount of $400,000, executed by Clear Vision Express, Ltd. in favor of Compass Bank (n/k/a BBVA USA), together with any respective renewals, modifications or extensions of the same
   b. Commercial Security Agreement, dated June 9, 2017, executed by Clear Vision Express, Ltd. in favor of Compass Bank (n/k/a BBVA USA), together with any renewals, modifications, extensions, or change in terms to the same

4. Loan No. ▇▇41-18:
   a. Promissory Note, dated July 19, 2017, in the amount of $1,125,000, executed by Clear Vision Express Tucson, LLC in favor of Compass Bank (n/k/a BBVA USA), together with any respective renewals, modifications or extensions of the same
   b. Business Loan Agreement, dated July 19, 2017, executed by and between Clear Vision Express Tucson, LLC, and Compass Bank (n/k/a BBVA USA), together with any renewals, modifications, extensions or change in terms to the same

    c. Commercial Security Agreement, dated July 19, 2017, executed by Clear Vision Express Tucson, LLC in favor of Compass Bank (n/k/a BBVA USA), together with any renewals, modifications, extensions, or change in terms to the same

    d. Commercial Guaranty, each dated July 19, 2017, executed by Michael A. Hochman, Clear Vision Express, Ltd., CVE Arizona Optometry, LLC, and Michael A. Hochman M.D., P.A., together with any other guaranty agreements executed in connection with the loan

5. Loan No. ███████41-59:

    a. Promissory Note, dated July 19, 2017, in the amount of $1,175,000, executed by Clear Vision Express Tucson, LLC in favor of Compass Bank (n/k/a BBVA USA), together with any respective renewals, modifications or extensions of the same

    b. Business Loan Agreement, dated July 19, 2017, executed by and between Clear Vision Express Tucson, LLC, and Compass Bank (n/k/a BBVA USA), together with any renewals, modifications, extensions or change in terms to the same

    c. Commercial Security Agreement, dated July 19, 2017, executed by Clear Vision Express Tucson, LLC in favor of Compass Bank (n/k/a BBVA USA), together with any renewals, modifications, extensions, or change in terms to the same

    d. Commercial Guaranty, each dated July 19, 2017, executed by Michael A. Hochman, Clear Vision Express, Ltd., CVE Arizona Optometry, LLC, and Michael A. Hochman M.D., P.A., together with any other guaranty agreements executed in connection with the loan

6. Loan No. ███████58-34:

    a. Promissory Note, dated July 19, 2017, in the amount of $150,000, executed by CVE Arizona Optometry, LLC in favor of Compass Bank (n/k/a BBVA USA), together with any respective renewals, modifications or extensions of the same

    b. Business Loan Agreement, dated July 19, 2017, executed by and between CVE Arizona Optometry, LLC, and Compass Bank (n/k/a BBVA USA), together with any renewals, modifications, extensions or change in terms to the same

    c. Commercial Security Agreement, dated July 19, 2017, executed by CVE Arizona Optometry, LLC in favor of Compass Bank (n/k/a BBVA USA), together with any renewals, modifications, extensions, or change in terms to the same

    d. Commercial Guaranty, each dated July 19, 2017, executed by Michael A. Hochman, Clear Vision Express, Ltd., Clear Vision Express Tucson, LLC, and Michael A. Hochman M.D., P.A., together with any other guaranty agreements executed in connection with the loan

7. Loan No. ███████58-42:

    a. Promissory Note, dated July 19, 2017, in the amount of $315,000, executed by CVE Arizona Optometry, LLC in favor of Compass Bank (n/k/a BBVA USA), together with any respective renewals, modifications or extensions of the same

    b. Business Loan Agreement, dated July 19, 2017, executed by and between CVE Arizona Optometry, LLC, and Compass Bank (n/k/a BBVA USA), together with any renewals, modifications, extensions or change in terms to the same

    c. Commercial Security Agreement, dated July 19, 2017, executed by CVE Arizona Optometry, LLC in favor of Compass Bank (n/k/a BBVA USA), together with any renewals, modifications, extensions, or change in terms to the same

    d. Commercial Guaranty, each dated July 19, 2017, executed by Michael A. Hochman, Clear Vision Express, Ltd., Clear Vision Express Tucson, LLC, and Michael A. Hochman M.D., P.A., together with any other guaranty agreements executed in connection with the loan

8. Loan No. █████6727:

    a. Consumer Credit Agreement and Disclosure, dated October 15, 2019, in the amount of $1,000,000, executed Michael A. Hochman and SanJuana Hochman in favor of BBVA USA, together with any respective renewals, modifications or extensions of the same

    b. Commercial Guaranty, dated October 15, 2019, executed by Michael A. Hochman Family Limited Partnership, together with any other guaranty agreements executed in connection with the loan